Good morning. Daniel P. Hammond for the appellants Belen and Isidro Cabacang. This case arises on appeal of the district court's decision dismissing the Cabacangs' challenge to the USCIS denial of their second applications for adjustment of status. The Cabacangs filed their second applications for adjustment of status 119 days after their first applications were denied, relying on the fact that they had not been in an unlawful status in excess of 180 days, as is permitted under 8 U.S.C. section 1255K. Mr. Hammond, I have a serious question as to both the district courts in our jurisdiction to entertain this claim, since, as I read our authorities, they have yet to exhaust all of their remedies before USCIS with regard to their attempt to adjust, and that even if they fail in that regard and are placed in removal proceedings, the immigration judge will have the authority to reconsider anew the question as to whether or not they're entitled to adjustment of status, and then we will ultimately have jurisdiction, if you lose at the IJ and BIA level, to hear a petition for review on the claim you're pressing here. So what are you doing here now? Well, the reason we are here, Your Honor, is because when they denied the application for adjustment of status, they simply did not charge the appellants with removal. They didn't place them in removal proceedings. They were left without a forum to seek recourse. But you haven't appealed administratively that determination, have you? Your Honor, there is no appeal administratively. From CIS's denial? There is none. When adjustment of status is denied, it is a final decision within the agency, which is within the Department of Homeland Security. Only if the government elects to engage their prosecutorial discretion and charge them and put them in removal proceedings would they then have that application as a relief available to them. In fact, they were still within their lawful period when they filed their application for adjustment of status. They were here lawfully still at that time, weren't they? Correct. The first time, certainly, within their nonimmigrant status, and the second time, based on our argument, within the legal period allowable under Section 1255K. In fact, the reason we sought relief in the district court at the time was because they were being terminated from their employment as registered nurses, and they hadn't been placed in removal proceedings. The government came into court saying they had because a document had been issued, which never was filed with the immigration court for almost a year and a half after that. And because of that, jurisdiction never vested within the immigration court, and they had no venue in which to seek review of the determination. And your position is you shouldn't have to sit and wait until removal proceedings. Exactly. It placed them in an untenable position. Have proceedings been initiated? They have since. Subsequent to the initial decision in the U.S. District Court, they have been charged and placed in removal proceedings, which have been laid in abeyance pending these proceedings. Given the fact that, taking what you said as being correct for a moment, if at the time the adjustment was denied there was no proceeding, but it occurred subsequently and certainly before the disposition of this matter, are we to assume that we are frozen in time in our analysis, or do we take into account the fact that there are currently proceedings which by definition render what happened before a non-final judgment? There's not a case on point with respect to that. I would argue that the district court's jurisdiction, once it's been exercised, should take precedence over the administrative proceedings, and that it would be patently unfair to allow the government to defeat a federal court's jurisdiction by merely issuing a notice to appear in an administrative removal proceeding at any point in time after a federal complaint has been filed, especially since they could deny an application for adjustment of status and never issue it, and only when an applicant sought relief in the district court, then they could defeat the court's jurisdiction. What was the basis for their adjustment of status application? They were petitioned as registered nurses by a local Southern California hospital. And that gives them? They're in a preference category. Registered nurses are in a shortage occupation. They're ordered to schedule a preferential status to fill approximately 1.7 void openings for nurses in the country. So you think that what we would want would be to have these people apply for adjustment of status? Absolutely. And have that settled rather than just make them wait until their deportation proceedings. Otherwise, they might never do the right thing. I agree. How do we get around the problem that as the situation stands right now, that prior denial of adjustment of status is not a final order? Because they are in removal proceedings, and the immigration judge has the authority de novo to redetermine their eligibility for adjustment of status with full rights of petition to a federal court of appeals after the BIA review. It is somewhat of a quandary, and it goes back to the other judge's question, which is, at what point is the district court's assertion of jurisdiction sacrosanct? Once they've accepted the case, the legal issues are the same, correct? And both sides have briefed the legal issues. There's no final order within the agency, so the statutory jurisdiction stripping provisions do not apply. I guess the question, from my mind, is one of expertise. As good a judge as District Judge Pregerson is, he's not an immigration officer, and we're not experts on adjustment of status. So why shouldn't we defer to the experts within the Department of Homeland Security, who make these determinations all the time, subject to your client's rights to seek judicial review after they've exhausted their administrative remedies? And the agency has had every opportunity to do the right thing. But they have not. Well, we don't know that yet, because the immigration judge has the authority. True. Ultimately, we don't know that. And the agency that we're speaking of specifically being the United States Citizenship and Immigration Services, not the Executive Office for Immigration Review, which is under the Department of Justice in a separate cabinet department, didn't have the opportunity to do the right thing yet.  But in fundamental fairness to the appellants, they were waiting almost a year and a half, and it never happened. They sought review because it didn't happen immediately, and they were on the verge of losing their jobs, their employment, and their entire livelihood. Let me ask you, if your construction of the law is correct, are you arguing that you're entitled to a stay of the removal? I know I'm not right here, but I mean, if that's your next step, notwithstanding what McKen says, is that where you're going with this? Well, I think that's the logical next step, Your Honor. Well, what was the basis for the district? You're here appealing the district court's summary judgment? Correct. And the basis for that was? They believe they properly exercised jurisdiction. However, they disagreed with our interpretation of the term a lawful status as used in Section 1255K. So that was on the merits? Correct. And there was a joint stipulation to reopen, to consider, or something like that? Prior to that, yes. There had been a temporary restraining order in place, and then they reopened the case. And that was after the deportation proceedings had begun? Before. Or before. Which was before? The... Stipulation to reopen? Correct. And the judgment was when, in conjunction with that? That came around the same time. When we were briefing for the last decision in the district court, they still hadn't filed the notices to appear in immigration court. They had issued them, but not filed them. And so no jurisdiction invested. In the immigration court? Correct. Okay. Okay. I have only 18 seconds left. It will give you a minute. Thank you. My name is Gisela Westwater, and I'm here for the government. I would first like to take issue with a few preliminary facts as they were presented. The second I-485, so the first I-485s of the CAVICOMs were denied. And in the denial, it informed them that they had no longer any lawful status, because their non-immigrant petitions had expired during the pendency of that 485. They then have 116 extra days that take place while they remain in the country, and then they file a second set of I-485s. The second set of I-485s is denied because it finds from the first time that their B-2 non-immigrant visas terminate until they file the second I-485s all counts as unlawful presence or as unlawful status. And therefore, they were not entitled to adjustment within the United States, which is a benefit. So the CAVICOMs appealed that through a motion to reconsider. That was denied on January 3, 2007, and within three weeks, on the 24th of 2007, plaintiffs, the CAVICOMs, had already filed a complaint in the district court. So within three weeks, aliens who have again been told, no, you are required to leave. Well, how do they get review of them? Well, Your Honor, at this time, CIS doesn't even know they haven't left. They've simply been told, as we would expect law-abiding visitors to our country, to leave, and they haven't done so. Within three weeks, they've informed us we're not going to, we're going to have a suit. Well, but they, let's assume that they have at least a good faith belief that they're entitled to have their status adjusted because they've got jobs that are needed in the country and there's a provision that says that you can have your adjustment status changed. Now, what do they do if the agency tells them, no, we don't agree with you? There's no review of that at all? No, Your Honor. In this case, CIS did initiate removal proceedings, but not within three weeks of it giving its final decision. In fact, ICE initiated removal proceedings in June. So here you have the dilemma of the government. Is it going to be considered retaliatory if we now initiate now that we're aware they're not leaving? So they have to wait for removal proceedings? So removal proceedings were initiated. Yeah. And then because of the district court proceedings, there was an agreement that those proceedings be terminated so that they could go back. Which proceedings? The initial removal proceedings. And you'll find an order in the record, so it is not true that they were not initiated. A judge had to terminate, an immigration judge had to terminate proceedings because during proceedings, CIS does not have authority over 485, over applications to adjust status anymore. So the IJ had to terminate. It was reopened. CIS looked at it again, denied, refiled the complaint or reopened a new amended complaint in the district court. Then we have to reinitiate the NTAs again. And, yes, there was a problem. One of the NTAs was refiled quickly when there was an error. So we finally get the NTAs going again in front of the immigration court, but we keep getting denials now. Or not denials, excuse me, requests for stay pending district court litigation. Well, why isn't that right? If everybody agreed that the removal proceedings should be terminated so that there could be a decision in the district court, then why aren't they entitled to a review, an appeal of that decision under 1291? Your Honor, not everyone agreed there should be a review in the district court. There was simply an agreement that CIS could not act on the renewal of the I485s as long as there were immigration proceedings. So once those proceedings, once it was reinitiated So it was agreed that the district court should act? No, Your Honor. It was simply agreed that, as an agreement of the parties, it went back so that CIS could relook at it. This is simply a question such as was brought in Morales' caretta recently by the court. It was whether Morales can challenge the denial of his adjustment of status application in habeas corpus proceedings after the enactment of the Real ID Act. And here is what it is. There may be a different situation where removal proceedings are not initiated. As this court mentioned in Morales' caretta, there are aliens who might have an I485 denied but are still here illegally with lawful status. Here legally or illegally? Legally. Such as in some other status, such as an asylee seeking to adjust to lawful permanent resident or somebody with TPS or something of that sort. That might be a different case, Your Honor. These aliens had removal proceedings and there is nothing that says cases can't become moot. Counsel, let me ask you this. Yes, Your Honor. Before the case was filed in the district court and after the most recent administrative decision regarding adjustment of status, was there a further appeal proceeding within the administrative system that was available to these folks? The regulations, Your Honor, specifically provide that they may be renewed in removal proceedings. And so this is seen through the agency regulations as the next step for individuals. So basically from your perspective, they didn't exhaust their administrative remedies before they filed before the district court, which gets back to the point that... After, Your Honor, the Cavalcons beat CIS to initiating an NTA. So we had a race to the courtroom under the Cavalcons' spirit. They had no administrative remedy at that point. Yes, Your Honor. So it forces under the Cavalcons' theory a race to the courtroom for them to beat us to realizing they haven't left and initiating an NTA. There is a Supreme Court case, which I can look up, which says that aliens can inform the United States, whether it's through a complaint or some other matter, by bringing themselves for deportation to initiate removal proceedings. CIS has given them this forum. One of the great things is right now the district court and the review here for this court is on an arbitrary and capricious standard because what you're reviewing is under the APA in administrative action. The aliens, the Cavalcons, in removal proceedings get de novo. They get to re-raise their 485s. They get to augment the record. So what do we have under this regime that the Cavalcons are presenting? We have two different standards. We have the CIS denial going forward through the district court to the Ninth Circuit, and then we might have in removal proceedings another 485 going through the IJ, the BI, and the Ninth Circuit. These are conflicting possibilities, conflicting standards, conflicting records, administrative records. How many bites the apple? 1252, as this court said in the Morales-Guerrero, with the Real ID Act it became clear it is supposed to be a channel. And where aliens such as the Cavalcons... Yes, Your Honor. I just want to make sure that I understand that you are acknowledging that if someone is, as long as they are here legally, they have a right to adjust status and to seek review in the district court. So that if they had an asylum, they were asylees or something like that and they want to get a different permanent status, they have a remedy. They don't have to wait until the time runs out. Several other courts, Your Honor, such as the Third Circuit, have suggested that we're an alien, either it hasn't been initiated by the time the court's got a decision or it's not going to be initiated. Those might be exceptions. And this court itself found in Morales-Guerrero that that would be an exception that this court might embrace. However, this is simply not the case. And the later actions by CIS to give a forum to the Cavalcons should not be held a nullity because jurisdiction was existing on the day they beat us to the court. And so we would find that mootness and Article 3 questions of controversies and ripeness should prevail in this case and allow CIS and ICE through initiation of NTA to simply require the alien to go through the administrative procedures that are there and as required under 1252A5, A2D, D, B9, all of these provisions under the Real ID Act or the ones that were added by the Real ID Act clarified this channeling provision. I know that it's referred to often as a zipper clasp. I prefer sort of channeling because that's really what it is. And bringing these extra avenues without all of these dueling procedures, which, yes, have held up since 1987 with the initial NTAs, were three years later and the immigration court has gone nowhere because of deference. This is 2007? It's 2007. Excuse me. Sorry. 2007. So in three years, because of stays, because of reopenings, it's just as in Morales v. Chiarito where this court found this isn't making things faster. What was the basis for the denial of their adjustment? It was that under 1155C7 and also C2, an alien is required to well, under C2 and C7 are required to have maintained some sort of lawful immigrant status in the United States. C2 refers to lawful immigrant status. C7, lawful nonimmigrant status. So neither of these two provisions, we believe, worked out. Because they were visitors? It terminated while their first I-485s were pending and they did not request, were not actually eligible as visitors for an extension. So once that first I-485s were denied under CIS's position, they could have left the United States, re-entered, they could have processed abroad, but they didn't. So they then filed new I-485s. Their contention is the entire time that first I-485 was pending, they were in some sort of status, that they conferred upon themselves by filing a benefit that has not been adjudicated a status other than they're nonimmigrant. And our position is no. The statute and the regulation, the regulation which defines what a lawful status is, you can't give yourself a lawful status, it doesn't say, in there, by filing an application until you've determined no. Thank you. Thank you. Yes, you can end there. Very briefly. The Kabbakhans did not attribute to themselves some sort of status. When they filed their first application, they were required to remain in the United States. They had to undergo biometrics and fingerprint requirements. They had to attend an interview. They were issued work authorizations. The mailer on the work authorization says, don't lose this card, this is evidence of your status. They didn't just somehow contrive some status. The regulation the government only brought up in litigation has nothing to do with the definition of lawful status prior to the enactment of 1255K, which broadened it in an apparent attempt by Congress to alleviate the harsh restrictions of 1255C2. With respect to the Morelis. Don't the regulations provide 180 days to do that? There is no regulation. In the 12 years since 1255K was enacted, they have not made an effort to promulgate any regulations. And only in 2008, in the midst of this litigation, did they even put forth an internal memorandum for their own guidance that purports to say the Cotacons were wrong. Morelis's gerdo, for the record, involved a removal order. And the statute is very specific that this Court has stripped the jurisdiction over file orders or the district court. Thank you. Thank you. A matter just argued is submitted for decision. We'll hear the next case, which is United States v. Duenas.
judges: Schroeder, Tallman, Smith M.